MARGARET DEXTER, Respondent, v. RANDOLPH BEARD, Appellant.

One C. being the owner of certain premises upon which was a lane or driveway sixteen feet in width, running east from a street, upon the south side of which lane was a store with a hatchway, giving access to the cellar which projected into the lane about five feet, sold and conveyed by full covenant deed to B., "his heirs and assigns," that portion of the premises north of the lane, "also a right of way the whole length of the south line" of the premises conveyed, "between said south line and a line drawn parallel with the north side of the store * * * to be used by the grantee in common with the grantor, said lane not to be encumbered or built upon by either party." C. subsequently sold and conveyed the remaining portion of said premises, reserving the right of way between the store and B's south line, to be used mutually by the grantee and B., "their heirs or assigns respectively." Defendant having acquired title to the south portion, erected a building thereon which occupied over four feet of the lane. In an action brought by plaintiff, who had acquired title to the north portion, to compel the removal of that part of the building which encroached upon the way, evidence was introduced which, considered with the deed, authorized the finding, and the court found it was the intent of the parties to the deed first mentioned that the right of way should embrace the whole sixteen feet. *Held*, that the covenant that the lane "was not to be encumbered or built upon by either party," was one running with the land; that the words "either party" were not used in a restrictive sense, but as including all persons whom the party undertook to represent and bind with himself, that is "his heirs, executors, administrators and assigns;" and that, therefore, plaintiff was entitled to the relief sought.

*Harsha* v. *Reid* (45 N. Y. 415); *Clark* v. *Devoe* (124 id. 120), distinguished.

(Argued December 23, 1891; decided January 26, 1892.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made July 20, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action is in equity to compel the defendant to remove a portion of a brick store erected upon his land in the village of Cortland, which plaintiff claims encroaches upon a right of way which she uses jointly with the defendant.

The facts, so far as material, are stated in the opinion.

*A. P. Smith* for appellant. The south line of the right of way being uncertain as to location, making the right of way granted indefinite as to width, it is a well-settled principle that the grantee and those claiming under him, are limited in the extent and scope of their right by the necessity which gave rise to the grant. (*Nichols* v. *Luce*, 24 Pick. 102 ; *York* v. *Briggs*, 7 N. Y. S. R. 124 ; *Rexford* v. *Marquis*, 7 Lans. 249 ; *Huson* v. *Young*, 4 id. 63 ; *Bakeman* v. *Talbot*, 31 N. Y. 366 ; Goddard on Ease. 333 ; *Atkins* v. *Bordman*, 20 Pick. 291 ; 2 Metc. 457 ; *Mathews* v. *D. & H. C. Co.*, 20 Hun, 427 ; *Farrington* v. *Burdy*, 5 id. 617 ; *Tyler* v. *Cooper*, 47 id. 97 ; Code Civ. Pro. §§ 992, 993 ; *Clark* v. *Devoe*, 124 N. Y. 120.) This action could not have been sustained, if the plaintiff had sufficient left north of defendant's building for any useful and proper purpose had in view at the time of the grant. (*Johnson* v. *Kinnicut*, 2 Cush. 153 ; Washb. on Ease. [4th. ed.] 287 ; *Spencer* v. *Weaver*, 20 Hun, 450 ; *Harding* v. *Wilson*, 2 Ban. & C. 96 ; *Rexford* v. *Marquis*, 7 Lans. 250 ; *Shaver* v. *Cohn*, 40 How. Pr. 129 ; *Jackson* v. *Allen*, 3 Cow. 220 ; *T. I. Co.* v. *Cunningham*, 8 Allen, 139.) It was error for the court to refuse to find that under the undisputed evidence, and under the deeds plaintiff and her grantors were entitled to only so much of the lane as was necessary for the reasonable use of the same as a passage-way. (*Kennedy* v. *Porter*, 109 N. Y. 526 ; *Griffiths* v. *Morrison*, 106 id. 165 ; *Odgen* v. *Jennings*, 62 id. 526 ; *Grafton* v. *Moir*, 30 N. Y. S. R. 314.) The clause in the deed from Crosby to Barnard, granting a right of way, should be construed in the light of the circumstances existing when the contract was entered into, the situation of the parties to the deed and the consideration therefor. (*French* v. *Carhart*, 1 N. Y. 96–102 ; *Bridger* v. *Pierson*, 45 id. 601, 604 ; *Winchester* v. *Osborne*, 61 id. 561 ; *Hall* v. *W. Co.*, 103 id. 129, 136 ; *Coleman* v. *Beach*, 97 id. 553 ; *Manners* v. *Johnston*, L. R. [1 Ch. Div.] 673, 678 ; *Bagnall* v. *Davies*, 140 Mass. 76 ; *Sanburn* v. *Price*, 129 id. 387.) Assuming that the width of the right of way was indefinite by the grant, and the parties selected the place where they would exercise the

easement thus granted, what was before indefinite became fixed and certain and the easement could not be exercised in any other place.   In such case where there has been a practical location of the way granted the grantee cannot afterwards change it. (*Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194–197 ; Washb. on Ease. 225–240 ; *Wynkoop* v. *Burger*, 12 Johns. 222 ; *Bannon* v. *Angier*, 2 Allen, 128 ; *Jennison* v. *Walker*, 11 Gray, 423.) The express covenant in the deed from Crosby to Barnard, "said lane not to be encumbered or built upon by either party," was a personal covenant, not running with the land. (*Clark* v. *Devoe*, 124 N. Y. 120 ; *Harsha* v. *Reid*, 45 id. 415.) In this class of cases time is not a necessary element, as the owner of the easement is held to be estopped.   (Washb. on Ease. [3d ed.] 661 ; *Snell* v. *Levitt*, 110 N. Y. 595, 602, 603 ; *Welsh* v. *Taylor*, 27 N. Y. S. R. 301 ; *Latimer* v. *Livermore*, 72 N. Y. 174 ; *Corning* v. *Gould*, 16 Wend. 532 ; 3 Kent's Comm. 448 ; *Cartright* v. *Maplesden*, 53 N. Y. 622 ; *Dillman* v. *Hoffman*, 38 Wis. 559 ; *Crane* v. *Fox*, 16 Barb. 184 ; *Pope* v. *O'Hara*, 48 N. Y. 446.)   If, under a strict construction of the grant from Crosby to Barnard, the court should decide that the right of way there given was intended to and did embrace the hatchway, or if the court should hold that the express covenant contained in the deed, "said lane not to be encumbered or built upon by either party," was not personal, but a charge running with the land, even then, under the circumstances shown in this case, a court of equity should not grant the harsh relief demanded ; and this judgment should be reversed. (*Trustees, etc.,* v. *Thatcher*, 87 N. Y. 317 ; *Clark Case*, 18 Barb. 350 ; *Welch* v. *Taylor*, 50 Hun, 146 ; *Conger* v. *Hedges*, 45 id. 296 ; *City of London* v. *Nash*, 1 Ves., Sr., 12 ; *Willard* v. *Taylor*, 8 Wall. 557 ; *Peters* v. *Delaplain*, 49 N. Y. 362 ; *Bruce* v. *Tillson*, 25 id. 202 ; *McWilliams* v. *Long*, 32 Barb. 194 ; *Margraf* v. *Muir*, 57 N. Y. 155 ; *Mathews* v. *Terwilliger*, 3 Barb. 51 ; *Delevan* v. *Duncan*, 49 N. Y. 485 ; *Taylor* v. *Longworth*, 14 Pet. 172 ; *Page* v. *McDonnell*, 55 N. Y. 299.)   It was error to find that the plaintiff was entitled to an injunction.   (*Calhoun*

v. *Millard*, 121 N. Y. 69 ; *Young* v. *Campbell*, 75 id. 525 ; *Town of Venice* v. *Woodruff*, 62 id. 462 ; *McMurray* v. *Noyes*, 72 id. 523.) The court erred in allowing the plaintiff to testify to a conversation she heard between Daniel Bradford and her grantor, William O. Barnard. (Code Civ. Pro. § 829 ; *Holcomb* v. *Holcomb*, 95 N. Y. 316 ; *In re Dunham*, 121 id. 575 ; *In re Eysaman*, 113 id. 62.)

*J. E. Eggleston* for respondent. The expression in the deed " said lane not to be encumbered or built upon by either party," is a covenant by both parties to the deed. (1 Add. on Cont. § 227 ; 2 Wait on Act. & Def. 366 ; *Bull* v. *Follett*, 5 Cow. 170 ; *Lovering* v. *Lovering*, 13 N. H. 513 ; *Booth* v. *C. N. Co.*, 74 N. Y. 21 ; *Watertown* v. *Cowen*, 4 Paige, 510 ; *P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400 ; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 122 ; *Hart* v. *Lyon*, Id. 663 ; *Avery* v. *N. Y. C. R. R. Co.*, 106 id. 142.) The defendant, when he took his title, had notice of this covenant, and took his deed subject to it. The right to the uninterrupted user of the whole of the land, as it was in 1846, was granted by the terms of the deed. (*Huttemeir* v. *Albro*, 18 N. Y. 48 ; *Doyle* v. *Lord*, 64 id. 432.) Twenty years' uninterrupted and unqualified enjoyment and user of such a right as plaintiff claims is decisive evidence of such a grant. (*Lansing* v. *Wisewell*, 5 Den. 213 ; *Hammond* v. *Zehner*, 21 N. Y. 118 ; *Ward* v. *Warren*, 82 id. 265 ; *Nichols* v. *Wentworth*, 100 id. 455 ; *Taylor* v. *Hopper*, 2 Hun, 651 ; 62 N. Y. 649 ; *Child* v. *Chappell*, 9 id. 241.) The claim made by defendant that the covenant in the deed not to build was broken before the title came to defendant or to plaintiff, and that, therefore, this plaintiff had no remedy on the covenant, is not well taken. (*Maynard* v. *Mayor, etc.*, 11 Paige, 428 ; *Beach* v. *Crain*, 2 N. Y. 86 ; *A. D. Co.* v. *Leavett*, 54 id. 35 ; *Trustees, etc.*, v. *Lynch*, 70 id. 440.) When defendant built upon the lane, he broke the covenant in the deed, and this action lies on account of that breach, to compel the removal. (*Trustees, etc.*, v. *Cowen*, 4 Paige, 510 ; *DuBois* v. *Darling*, 12 J. & S. 436 ; *Taylor* v. *Hopper*, 62 N. Y.

649; *P. Ins. Co.* v. *C. Ins. Co.*, 37 id. 400; *Wheelock* v. *Noonan*, 108 id. 179.) The point made by the counsel for appellant at General Term that the covenant not to build upon the lane should not be enforced in equity, when the plaintiff can have full indemnity in damages in an action at law, is not tenable. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.)

Parker, J. By the judgment in this suit it was decreed that the defendant remove so much of a building erected by him, as stands upon a strip of land of the width of four and four-tenths feet, and in length ninety feet, on the ground that it is an obstruction to a right of way granted to the plaintiff, and her predecessors in title, by one Parker Crosby, who was the common source of title of both plaintiff and defendant.

Prior to May 5, 1846, Parker Crosby was the owner not only of the space between certain buildings, a portion of which is in controversy here, and which the plaintiff claims to be entitled to use in common with the defendant as a right of way, but also of the lands and buildings on either side of it.

At that time the condition of the premises was as follows: A lane or driveway sixteen feet in width extended east and west from Main street. On the north side of the lane was a fence, extending from the street back about one hundred and fifty feet, while on the south was a store, occupied by one Van Valen, which ran from the street back about forty feet, in the rear of which was an open space, where teams were accustomed to be driven for the purpose of loading and unloading butter and other produce, temporarily stored in the back portion of the store. On the north side of the Van Valen store, and about twenty feet from the street, there was a hatchway extending out into the lane, from the building about five feet, and of the width of four and one-half feet. It was walled up on three sides, and was used for the purpose of lowering heavy packages into the cellar. On the outer or northerly side the wall was built up to about the level of the ground, while the side walls slanted from such heighth to the top of the cellar

wall, which was about twenty inches above the ground. A framework was placed on the top of the three sides, and on this were doors opening each way. From this hatchway, and projecting about two feet from the upper story of the store, there was a beam covered with a hood, to which a pulley and rope could be attached, and worked in lowering or raising heavy packages in the hatchway. On the last-mentioned date, Parker Crosby granted and conveyed to Wm. O. Barnard, his heirs and assigns, the premises next adjoining the north side of the lane. The deed, immediately after the description of the premises, contained the following : " Also a right of way, the whole length of the south line of the above-described lot, between the said south line and a line drawn parallel with the north side of the store, now occupied by the said James Van Valen, or the grantor's village lot this day mortgaged to said grantee, to be used by the grantee in common with the grantor ; said lane not to be encumbered or built upon by either party."   *   *   *   Through several mesne conveyances, that portion of the land which next adjoins the lane, on the north of the right of way granted by said deed, passed to the plaintiff, who obtained title February 1, 1882. About three months after the conveyance to Barnard, and on August 12, 1846, Crosby conveyed to Van Valen the premises south of the north line of the lane, which included the store on the south side thereof, the deed containing the following reservation : " Except the right of way between the store and Barnard's south line, to be used mutually by Barnard and Van Valen, or their heirs or assigns respectively." By subsequent conveyance the title to the premises thus granted became vested in the defendant January 23, 1882. Each of the intermediate deeds, as well as the one to the plaintiff, contained an exception in substantially the same language as in the one from Crosby to Van Valen. The deed to the defendant, in addition, contained the following : " The right of way hereinbefore excepted is the same right of way described in the deed from Parker Crosby and wife to William O. Barnard, recorded in Cortland county clerk's office May 14, 1846."

It does not appear that by any act of the plaintiff, or her·
predecessors in title, the easement granted to Barnard had been
acquired by the defendant, or his grantors; therefore, the·
plaintiff had at the commencement of this suit all of the rights·
which were granted in the deed from Crosby to Barnard.

The first question presented to the trial court for determi-
nation was, whether the right to use the whole of the space·
between the Van Valen store and the north side of the lane·
was granted, or so much thereof as was necessary for the use
which gave rise to the grant?

Inasmuch as the south line was declared to be " a line drawn
parallel with the north side of the store now occupied by James
Van Valen," the defendant contended that a line equi-distant
from the north side of the store at all points was only provided
for, and, therefore, the description is as well satisfied by a line·
five or ten feet from the north side of the store, as one next
along it.    That the line created was adjustable and uncertain as
to location.    It was further contended on the part of the defend-
ant that the existence of the covered hatchway in the lane at
the time of the conveyance in 1846, tended to show that the
intention of the parties were that only so much of the land as
should be required for the purpose of passage of teams should
be granted, for they could hardly have intended that the hatch-
way should be closed up and the store deprived of the benefit
of it, while there remained eleven and six-tenths feet between
the north side of it and Barnard's line for a driveway.    On
the other hand it was insisted that the line referred to was one
along the north side of the store; that the use of the word
" parallel " was not intended to make the line indefinite and·
uncertain as to location, but was made necessary because of
the fact that the store only extended back forty feet from the·
street, and as plaintiff was granted a right of way ninety feet
deep, the limits of the right of way were thus accurately
described for a distance of fifty feet in the rear of the store as·
well as along it.    A part of the sentence describing the right·
of way declares " said lane not to be encumbered or built
upon by either party," and this, it·was insisted by the plaintiff,.

was a strong indication of the intention of the parties to include the entire sixteen feet in the right of way, for the word "lane" did not suggest any limitation certainly upon the width to be used and not to be built upon, but was so comprehensive as to necessarily embrace the entire width of sixteen feet. Evidence was also offered tending to show that this lane was largely used by teamsters, and that while the main travel was north of the hatchway, that to some extent wagons actually passed over it. In view of the fact that the phraseology employed in describing the right of way was susceptible of more than one interpretation, thus presenting a question as to what was intended by the parties to the instrument; whether they sought to preserve for all time a right of way of the full width of sixteen feet or merely a passageway of sufficient width to meet the necessities of the parties, became a question for the court to determine. In the absence of language clearly expressing the object which the parties intended to accomplish, the court was permitted, and it was its duty, to look at the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject-matter of the instrument. (*Heath* v. *Hewitt,* 127 N. Y. 166.)

In conformity with this rule evidence was introduced which, considered with the deed, permitted the court to find as a fact whether the parties intended that the description should embrace the entire space or only so much of it as should be necessary for the use of the parties for a single driveway. (*Simmons* v. *Cloonan,* 81 N. Y. 557–562.) The intent being found, its employment as an aid in the construction of the doubtful clause necessarily followed. Now, the trial court found that from the 12th of August, 1846, to the present, the plaintiff and her grantors were the owners of the right of way mentioned in the complaint, and "that said right of way is of the width of sixteen feet and extends in length from Main street or easterly to a distance of more than ninety feet. The same being defined in the deeds." This finding was required, we think, if the surrounding circumstances considered in connection with the writing, induced, as it apparently did, the con-

clusion that the parties so intended.   Therefore, in such further consideration as may be given, we shall deem it established that the grant described in the deed was of a right of way sixteen feet in width and about ninety feet deep.

The appellant contends that if so, it is merely a description of the land in, through and over which the grantee was entitled to a right of way, and would not necessarily describe the limits of the way granted ; therefore, this action cannot be maintained if the plaintiff has a sufficient right of way north of defendant's building for the purposes had in view at the time of the grant.   His position in that respect requires consideration, unless the plaintiff can take advantage of the covenant providing " said lane not to be encumbered or built upon by either party."   This the appellant insists she cannot do, because the covenant is one not running with the land, but a mere personal covenant between the original grantor and grantee.   In support of such contention is cited *Harsha* v. *Reid* (45 N. Y. 415), and *Clark* v. *Devoe* (124 id. 120).   In *Harsha's* case the covenantees did not derive their title from the covenantor, for the covenant was an independent personal contract in no way connected with the title.   The defendant in that case made a contract with a third party that no one should be allowed to erect a grist-mill on a water privilege which was included in a subsequent sale to the plaintiff.   By it was granted no interest in the premises to the covenantees, and it was, therefore, a purely personal contract, which could in no way burden the estate which came to the subsequent grantees.   It has, therefore, no bearing upon the question here presented.   In *Clark's* case the owner of two adjoining lots in the deed, conveying one of them, covenanted for himself, his heirs, executors, administrators and assigns, that he would not erect on the lot remaining unsold any building which should be regarded as a nuisance.

It will be observed that the covenant had no relation to the land conveyed, but referred wholly to premises with reference to which neither party parted with, or received any title or interest at the time with or as a part of making the covenant.

It was then a mere personal covenant, not binding on a subsequent grantee of such premises. The question presented, therefore, was whether this personal covanant rendered the covenantor liable to respond for the acts of subsequent grantees as well as his own, or only for his own. And the court held that the grantor only intended to contract against his own acts, and the covenant should not be read distributively as if the grantor had covenanted that he would not erect a structure which should be regarded as a nuisance, nor would his executors, administrators or assigns.

Here the question presented is quite different. The grantor in the deed conveying the fee of certain lands, also granted an easement in a strip of land adjoining, which was described. While the fee still remained in the grantor, the easement of a right of way became annexed to the lands conveyed. And to more securely effectuate the intention of the parties that the right of way should not be interfered with, it was further agreed that the lane should not be encumbered or built upon by either party.

Notwithstanding the manifest intention of the parties and the fact that the clause covenanting against encumbrances on the right of way, formed a part of the sentence describing the limits of the easement, the appellant contends that the easement was not intended to bind other than the immediate parties to the instrument, because in that phrase the words " either party " were used instead of " either party, their heirs, executors, administrators or assigns."

The construction thus contended for would, we think, not only do violence to the intention of the parties, but would be too narrow, in the light of the phraseology elsewhere employed in the deed. It recites that the parties of the first part, " doth grant, bargain, sell, alien, remise, release and convey unto the party of the second part, and to his heirs and assigns forever," the premises described, and also the right of way, which concludes with the phrase " said lane not to be encumbered or built upon by either party." And further declares that the party of the first part, for themselves, their heirs, executors, administrators

and assigns, do covenant and agree to and with the party of the second part, his heirs and assigns, that they are seized of the estate, have a good right to convey, that the estate is free from encumbrances, and that the grantee shall have quiet enjoyment of every part, without molestation by the parties of the first part, their heirs or assigns.

Had the words "either party" been omitted, it would not have been contended but that the covenant bound all subsequent grantees. And their use cannot be held to have been intended to limit the duration of the covenant to such a period as the grantor and grantee should severally remain the owners of the dominant and servient estates, for they were undoubtedly employed, not in a restrictive sense, but broadly, so as to include by the word "party" all persons whom the party undertook to represent and bind with himself, viz., the party of the first (or second) part, his heirs, executors, administrators or assigns.

It follows that so much of defendant's building as encroached upon the lane, was in violation of the rights of the plaintiff, and she thereby became entitled to have the wrong righted. The court, in the exercise of a discretion, guided by established equitable principles, reached a conclusion that the injunction prayed for in the complaint afforded the only adequate remedy, and no sufficient reason has been pointed out to support a reversal of such determination by this court. We have examined the exceptions to which our attention has been directed, but they do not call for a reversal of the judgment, and need not be discussed.

The judgment should be affirmed.

All concur, except VANN, J., not voting.

Judgment affirmed.